## Commonwealth *v.* McCue, Appellant.

*Criminal law—Perjury—Election law—Residence of elector—Jurat—Clerk of election—Judge of election.*

1. A conviction upon an indictment for perjury will be sustained where the evidence shows that the prisoner made an affidavit before an election board that a voter resided at a particular house in an election district, that the voter did not in fact live at the place designated, and that the prisoner knew that this was the case.

2. An oath may be lawfully administered at an election by a clerk acting in the presence of and by the authority of the judge of the election, when the judge of the election signs the jurat after the oath has been so administered.

3. A ministerial act done in the presence of, and under the authority and direction of, an officer duly authorized to perform that act, is the act of the officer himself.

4. Where an affidavit taken before an election board expressly states that the affidavit was "duly sworn," and the jurat signed by the judge of the election is to the same effect, it will be presumed that the affiant was in fact sworn.

Argued March 7, 1911.     Appeal, No. 32, March T., 1911, by defendant, from judgment of Q. S. Luzerne Co.; Sept. T., 1910, No. 451, on verdict of guilty in case of Commonwealth v. Thomas McCue.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.    Affirmed.

Indictment for perjury.    Before FULLER, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which the prisoner was sentenced to pay a fine of $100, and undergo imprisonment in the penitentiary for not less than one year, nor more than seven years.

*Error assigned* was in refusing binding instructions for the prisoner.

*John T. Lenahan,* with him *John J. O'Donnell,* for appellant.—Clerks of elections under our laws have no au-

thority to administer oaths: Com. v. Ziert, 4 Pa. C. C. Rep. 394; Com. v. O'Neill, 5 Pa. C. C. Rep. 209.

It is absolutely essential to the offense that the testimony relied on as constituting perjury was under an oath actually administered: Case v. People, 76 N. Y. 242; O'Reilly v. People, 86 N. Y. 154; Arnold v. Middletown, 41 Conn. 206; Respublica v. Newell, 3 Yeates, 407.

*W. Alfred Valentine*, district attorney, for appellee.— The commonwealth started out by the production of the affidavit regular in form, proved that the accused signed it and that the officer before whom it purported to be sworn to, signed the jurat. This alone was sufficient evidence on which to submit to the jury the question whether the accused actually swore to the affidavit: State v. Madigan, 57 Minn. 425 (59 N. W. Repr. 490).

An act done by one in the presence and under the control of another is regarded not as the exercise of a delegated authority, but as the personal act of the party in whose behalf it is performed: People v. Smith, 20 Johns. (N. Y.) 63; Hanson v. Rowe, 26 N. H. 327; Ellis v. Francis, 9 Ga. 325; Reinhart v. Miller, 22 Ga. 402; State v. Mercer, 101 Md. 535 (61 Atl. Repr. 220); Oaks v. Rodgers, 48 Cal. 197; Walker v. State, 107 Ala. 5 (18 So. Repr. 393); Sikes v. State, 105 Ga. 592 (31 S. E. Repr. 567).

Administering the oath in open court by one not an officer is regarded as the act of the court, so as to make a witness liable to a charge of perjury if he testifies falsely: Stephens v. State, 31 Tenn. 157; Com. v. Jongrass, 181 Pa. 172; Walker v. State, 107 Ala. 5 (18 So. Repr. 393); Com. v. O'Neill, 5 Pa. C. C. Rep. 209.

The oath was in fact administered: United States v. Mallard, 40 Fed. Repr. 151; Markey v. State, 47 Fla. 38 (37 So. Repr. 53); State v. Day, 108 Minn. 121 (121 N. W. Repr. 611); State v. Glisson, 93 N. C. 506; People v. Cook, 8 N. Y. 67.

OPINION BY PORTER, J., April 17, 1911:

The appellant was tried and convicted in the court be-

low upon an indictment charging him with perjury, founded upon an affidavit which it was alleged he had made before the election board of the election district of South Wilkes-Barre township. One James Burke offered himself as a voter at the election in question, stating that his name was Thomas Miles, and as his name did not appear upon the register list he was informed by the election officers that he would have to make an affidavit and that an affidavit would be required, also, by a qualified voter of the election district stating his qualifications. This defendant was a qualified voter of the district and stated to the board that he would vouch as to the right of the man who tendered himself, under the name of Thomas Miles, to vote in the district; thereupon the blanks in one of the regular forms of affidavit required by law, which are furnished all election boards, were filled out, and when this was done the paper which the law required to be filed as an affidavit constituted a statement by this defendant that he knew "Thomas Miles, who now claims the right to vote therein, that I have known him for one year and upwards, and that the said claimant for the last two months and upwards has resided in said election district, in the house of Eliab Jones, Prospect Street," and this statement the defendant signed. This paper, signed by the appellant, began with the words found in all affidavits of this character, to wit: "I, Thomas McCue, being duly sworn, say," etc. Below the signature of this appellant, a jurat in the words, "Sworn and subscribed this——— day of June, 1910, before me," and this jurat was signed "John Brennan, Judge." It was conclusively established by evidence and conceded by this defendant that he did sign this paper which purported to be an affidavit, at the election and in the presence of the election board, and that John Brennan was the judge at said election and that said Brennan, as judge, did then and there sign the said jurat. This paper was accepted by the board as complying with the terms of the law, and the man Burke was, under the name of Thomas Miles, permitted

to vote.  The defendant, having been found guilty by the jury and judgment having been entered upon the verdict, now appeals.

The evidence produced by the commonwealth conclusively established that the man Burke, who voted under the names of Miles, had not resided in the election district, that he had not resided at the house of Eliab Jones, and that no other man known as Thomas Miles had ever resided at that house.  The testimony of the man James Burke, who had voted as Thomas Miles, was to the effect that he had before going to the polling place told this defendant that his name was James Burke and that he would vote "by the name of Thomas Miles," and that this defendant thereupon said, "All right, Thomas Miles boarding with Eliab Jones."  The affidavit, if this appellant was sworn, was absolute, it did not purport to be made upon information and belief.  The first specification of error complains of the action of the court in instructing the jury that it was proper for them to consider that the statement of the affidavit purported to be made by the defendant on his own knowledge, not from information and belief, in passing upon the question whether or not the misstatement of fact, if there was a misstatement, was willful and corrupt.  "There is corruption in undertaking to swear positively to a thing of which you have little knowledge, and which you may know if you will take the trouble to inquire; and where there is this kind of corruption, the law implies malice:" Com. v. Cornish, 6 Binney, 249.  The first specification of error is overruled.

The second specification of error complains that the court erred in presenting the strong features of the commonwealth's case and in ignoring the theory of the defense on the question of what constitutes corrupt perjury under the statute.  We have examined the charge as a whole and find in it nothing to sustain this complaint of the appellant.  The learned judge of the court below fully and carefully instructed the jury as to all the elements necessary to constitute the offense.  If the defendant de-

sired more specific instructions a written request for the same should have been presented at the proper time. This specification of error is dismissed.

The third specification of error complains of the submission to the jury of the question whether the defendant had been sworn to the affidavit, upon which the indictment was founded. The affidavit, which the defendant had signed, stated upon its face that he had been duly sworn; the jurat, certifying that the defendant had been sworn was signed by the judge of the election; Burke had testified that the defendant "swore in his (Burke's) vote" and Nealon, who acted as one of the inspectors at the election, testified that the defendant had been sworn by Kerrigan who was acting as one of the clerks at the election. Nealon, the inspector, testified that the defendant was sworn by James Kerrigan, who was acting as the clerk of the witness (who was an inspector at the election), that after being so sworn this defendant signed the affidavit and then Brennan, the judge of election, signed the jurat. Brennan, the judge of election, testified that when Miles or Burke came to vote, Kerrigan, the clerk, asked him what his name was and he said " Thomas Miles " and thereupon Kerrigan looked on the register book and could not find his name, "so he said to me, Kerrigan said to me his name is not on the register. So I said to him, 'You know what to do with him then.' So Kerrigan took the affidavit, the paper, and asked him what his name and he told him. Kerrigan asked him where did he live. He said 'Eliab Jones, Prospect street.' So he filled out the paper and asked him who was going to vouch for him. He said Mc-Cue. Kerrigan said, 'Will you vouch for him, McCue?' McCue said, 'Yes, fill out the paper.' Kerrigan did and passed it over to McCue. McCue signed his name to it and passed it over to me and I signed my name to it, and Lyall gave him a ballot and he voted." Brennan, it is true, testified that no oath was administered to McCue, but this testimony was flatly contradicted by Nealon, the inspector, and by the jurat which Brennan had signed.

The testimony of Brennan clearly establishes that whatever was done by Kerrigan in his presence, was done with his consent and by his authority. The learned judge of the court below in submitting to the jury the question whether the defendant had been sworn to the affidavit used the following language: "Taking the affidavit as I have read it to you, taking the testimony of Burke, taking the testimony of Nealon, are you satisfied from all that evidence beyond a reasonable doubt, that the oath was administered by John Brennan, that is to say, by Kerrigan as the mouthpiece of Brennan, in his presence and by his authority; because if you find that, beyond a reasonable doubt then I would say to you that it is sufficient to sustain the prosecution on that point." The question of law presented is whether an oath may be lawfully administered at an election by a clerk, acting in the presence of and by the authority of the judge of the election, when the judge of the election himself signs the jurat after the oath has been so administered. It may be conceded that a clerk at an election has no legal authority, merely because of his own position, to administer an oath, and the court below so instructed the jury. The verdict of the jury in this case established the fact that the oath was administered by Kerrigan as the mouthpiece of Brennan, in the presence and by the authority of Brennan, the judge of the election. An election board, under our law, is a tribunal clothed with limited jurisdiction, and the judge and inspectors are authorized to administer oaths in passing upon questions by the law committed to their decision. While, in order to constitute perjury, the oath must be taken in the presence of an officer or tribunal authorized to administer it, the competency of the person who reads the words of the oath to the witness, and does the ministerial process of its administration, is immaterial. An act done by one in the presence and under the control of another is regarded not as the exercise of a delegated authority, but as the personal act of the party in whose behalf it is performed. A ministerial act done in the presence of and

under the authority and direction of an officer duly authorized to perform that act, is the act of the officer himself: Com. v. Jongrass, 181 Pa. 172; State v. Knight, 84 N. C. 789; Walker v. State, 18 So. Repr. (Ala.) 393; Oaks v. Rodgers, 48 Cal. 197; State v. Mercer, 61 Atl. Repr. (Md.) 220; Reinhart v. Miller, 22 Ga. 402; People v. Smith, 20 Johns. (N. Y.) 63. The evidence in the present case was sufficient to sustain a finding that the oath had been administered by the clerk in the presence and by authority of the judge of the election, and that was all that was required to sustain the indictment upon this branch of the case. The contention of the defendant that it was the duty of the court below to direct a verdict of not guilty because the testimony on behalf of the commonwealth, to the effect that the defendant had been sworn to the affidavit in question, failed to disclose the manner in which the oath had been administered, cannot be sustained. It was not incumbent upon the commonwealth to produce evidence as to the exact words which the election board used in administering the oath. The inspector of the election who testified used the words, speaking of the action of this defendant, "he was sworn," which in the ordinary acceptation of that term means that an oath was administered to him, and this testimony referred directly and expressly to the making of the affidavit upon which this indictment was based, it meant that he was sworn to the affidavit, before signing it. The affidavit signed by the defendant expressly stated that he was "duly sworn," and so likewise did the jurat signed by the judge of the election. When a party is sworn, when an oath is administered to him, if the party taking it makes no objection to the mode of administering it at the time, he is deemed to have assented to the particular form adopted and is liable to all the consequences of perjury as if it had been administered in strict conformity to the statute: People v. Cook, 8 N. Y. 67; State v. Glisson, 93 N. C. 506; State v. Day, 121 N. W. Repr. (Minn.) 611; United States v. Mallard, 40 Fed. Repr. 151. The testimony of a wit-

ness is not to be construed with the same technical nicety
that is applied in questions of pleading; his words are to
be given their everyday meaning; when he says that a
person has sworn or has been sworn in a judicial or other
proceeding that means that an oath was administered to
the person referred to, in the proceeding stated: Barger v.
Barger, 18 Pa. 489. The specifications are all overruled.

The judgment is affirmed and it is ordered that the de-
fendant appear in the court below at such time as he may
be there called and that he be by that court committed
until he has complied with that part of the sentence which
had not been performed at the time this appeal was made a
supersedeas.