## Hood Appeal

*Edward E. Hosey*, for appellant.

*Thomas F. Burke* and *Albert Anselmi*, for West Pittston Borough.

VALENTINE, P. J., February 14, 1951.—This is an appeal by Worthie Hood from the action of the Civil Service Commission of the Borough of West Pittston, removing him from the office of chief of police of that borough. The charges against him fall within certain reasons enumerated in section 1184 of the Borough Code of July 10, 1947, P. L. 1621-1714, 53 PS §13300.20, as follows:

"(2) neglect or violation of any official duty. . . .

"(4) inefficiency, . . . or conduct unbecoming an officer", and

"(6) engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage."

The civil service commission ruled that the charges had been sustained by the evidence. This conclusion is challenged by counsel for appellant. No question of procedure is involved.

The police force of the borough consisted of five officers, viz., chief of police, Worthie Hood, appellant here; assistant chief, Paul Adams; three patrolmen, viz., Harold Dale, Melchoir Pugh and Lester Gicking. These men worked six days every week and each had one day off, as follows: Chief Hood, Monday; Assistant

Chief Adams, Tuesday; Patrolman Dale, Wednesday; Patrolman Pugh, Thursday, and Patrolman Gicking, Friday. On Saturday and Sunday all five officers were on duty. Each worked eight hours daily. Special officers, appointed by the council, worked as relief patrolmen on a different day each week. The salary of the chief was $210 per month; assistant chief, $190 per month, and each of the patrolmen, $180 per month. The relief patrolmen were paid $.80 per hour.

The charges of neglect or failure of official duty and inefficiency are based upon the contention that appellant, as chief of police, failed to keep a complete and accurate record of the time served by himself, and of special officers, Reginald Ellis, Harold Hastie and Myrddyn Edwards; and also that he made false and inaccurate entries in the time book record of the police department and on the borough payrolls.

The allegation relative to the absence of accurate records relates to the failure of appellant to keep a daily report of his own time and that of the special officers when they were not acting in relief of regular officers, but engaged in the doing of special work.

For many years the practice adopted by the police department of the borough was to require daily reports covering the work of the salaried officers. This practice was followed by special officers when they were acting in relief of regular officers, but not when they were engaged in special work.

There is no evidence that the chief of police was ever instructed to make daily reports of his own work, or to have the special officers, who were doing special work, and not acting in relief of regular officers, submit the same.

In view of this state of the record we think that appellant should not be adjudged guilty of neglect or failure to perform his official duties by reason of the fact that no such reports were made. The borough code

is silent as to the duty of a chief of police relative to making reports. In the absence of a requirement, either by the council or the burgess that such daily reports should be made, we cannot conclude that appellant violated any official duty in this connection.

Prior to February 16, 1950, it was the uniform practice of the chief of police to regard the daily period of employment of police officers as embracing eight hours. This was the time entered in the time book and carried on the borough payrolls, and such practice related to both salaried officers and special officers employed on a per diem basis.

On February 16, 1950, Special Officer Owens was first listed as having worked nine hours, and on and after March 1, 1950, the other special officers, Ellis, Hastie and Edwards, were also recorded as having worked nine hours.

We think it apparent that the nine hours included a lunch period which had not been included when the eight-hour entries were made, and for which no special officer had been paid prior to February 16, 1950.

Appellant testified that he made the changes at the suggestion, and with the approval of the burgess, after the special officers had complained; that he received no instruction from council and did not notify council of the change. Regardless of whether the increase in compensation was merited, we cannot avoid the conclusion that the method used to bring it about was illegal. The compensation of police officers is fixed by council, and not by the burgess. Nor do we think the action can be justified, as attempted, on the theory that the special officers worked longer hours after March 1, 1950, than before. Both the burgess and Officer Owens testified that certain entries in the time books, with reference to the time the latter worked on designated Saturdays, was incorrect, and that some of the time listed as having been spent on Saturdays represented addi-

tional work on other days of the week. All the regular officers worked on Saturdays and Sundays. The burgess testified that he instructed the chief to use Officer Owens on Saturdays, if needed. The record does not warrant the conclusion that the services of Owens were needed on Saturday as all five regular officers were on duty on that day.

The evidence relied upon to establish that appellant had engaged or participated in the conduct of a political campaign, *otherwise than to exercise his own right of suffrage* consists of proof that he had signed the "affidavit of qualified elector" to the nomination petition of John Llewellyn, a candidate for the office of Republican committeeman in the sixth ward of West Pittston Borough at the primary election of 1950. The affidavit, attached to the petition, purports to have been taken before R. F. Switzgale, justice of the peace. Appellant admitted having signed the affidavit, but denied that he had circulated the petition, or that he had taken any supporting affidavit.

Llewellyn, the candidate, testified that the petition had been circulated by him. The justice of the peace was not called as a witness, nor were any of the signers of the petition. The contention of appellant's counsel relative to this feature of the controversy is set forth in his brief as follows:

"There is no evidence in this case that Chief of Police Worthie Hood engaged or participated in the conduct of any political or election campaign otherwise than to exercise his right of suffrage. There is in evidence a paper purporting to be a petition, but is no indication on its face that it was ever filed in the election bureau, and if it had been it is still no evidence that he engaged in political activities. Chief of Police Worthie Hood denied that he ever swore to the affidavit shown thereon, and no testimony was offered to show that he ever appeared before the justice of the peace whose signature

appears thereon for the purpose of swearing to an affidavit."

Llewellyn testified that the petition had been duly filed. The fact that the affidavit, attached to the petition, was signed by appellant, and the jurat thereto properly filled out by the justice of the peace, raised the presumption that appellant had, in fact, been sworn: Commonwealth v. McCue, 46 Pa. Superior Ct. 416.

However, we do not regard the circulation of the petition, or the taking of the oath, as controlling. The prohibition relative to political activities is all embracing. The only thing a police officer is permitted to do is to "exercise his own right of suffrage." The doing of any affirmative act in connection with any political campaign or election is prohibited. The signing of the affidavit by a qualified elector was necessary to complete the Llewellyn petition. It was an affirmative step essential to be taken that the petition might be filed. It was directly connected with and in furtherance of the campaign of Llewellyn as a candidate for committeeman. We conclude, therefore, that this charge has been sustained.

However, a careful analysis of the record leads us to the further conclusion that the penalty imposed was unduly severe. Appellant had been a member of the police force of West Pittston for 10 years. He had served as chief of police for over three years. This is the first and only time he has been charged with a dereliction of duty. The payrolls which he turned in, the correctness of which is now challenged, were paid with the approval of the finance committee. He did not profit from the commission of any act charged against him. The violation relative to the petition of Llewellyn was technical.

Under all the circumstances we are of the opinion that a suspension from office for a period of four months would have been ample punishment.

Therefore, now, February 14, 1951, after hearing of the appeal, we find appellant, Worthie Hood, guilty of violation of an official duty and of engaging in a political campaign other than to exercise his own right of suffrage and direct that he be suspended from the office of Chief of Police of West Pittston Borough for the period of four months.